UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HOLLY MACBAIN,

                            Plaintiff,

        -against-                                    1:10-CV-1561 (LEK/DRH)

SMILEY BROTHERS INC., d/b/a
MOHONK MOUNTAIN HOUSE; and
JON LEVIN; BRAD DOW; KEITH
ANDERSON; and THOMAS SMILEY,
individually and in their official capacities
and as aiders and abettors,

                            Defendants.
_____

**MEMORANDUM-DECISION and ORDER**

## I.    INTRODUCTION

        Plaintiff Holly MacBain ("Plaintiff") commenced this action on December 23, 2010, by

filing a Complaint against her former employer, Defendant Smiley Brothers Inc. d/b/a Mohonk

Mountain House ("MMH"), and supervisors, Defendants Jon Levin ("Levin"), Brad Dow ("Dow"),

Keith Anderson ("Anderson"), and Thomas Smiley ("Smiley").  Dkt. No. 1 ("Complaint").  On

January 18, 2011, Plaintiff filed an Amended Complaint alleging discriminatory acts in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act

("ADEA"); the New York State Human Rights Law, Executive Law § 296 ("NYSHRL"), and Labor

Law ("NYSLL") § 740; and the Equal Pay Act of 1963.[1]  See generally Dkt. No. 4 ("Amended

Complaint").  Plaintiff also alleges that Defendants Levin, Dow, Anderson, and Smiley aided and

abetted MMH's discriminatory acts in violation of the NYSHRL.  Id. ¶ 62.  On April 21, 2011,

_____

        [1]  Title VII is codified at 42 U.S.C. § 2000e et seq.; the ADEA at 29 U.S.C. § 621 et seq.;
and the Equal Pay Act at 29 U.S.C. § 206(d).

Defendants MMH, Levin, Anderson, and Smiley (collectively, "the Mohonk Defendants") filed a joint Answer to the Amended Complaint. Dkt. No. 14. Defendant Dow, represented by his own counsel, filed an Answer to the Amended Complaint on May 16, 2011. Dkt. No. 19.

Following discovery, the Mohonk Defendants and Defendant Dow each filed a Motion for summary judgment seeking to dismiss Plaintiff's claims against them in their entirety. Dkt. Nos. 26 ("Mohonk Motion"), 27 ("Dow Motion"). These Motions are presently before the Court. For the following reasons, the Court grants both Motions in full and dismisses Plaintiff's Amended Complaint in its entirety.

## II.    BACKGROUND

MMH, a family-owned resort located near New Paltz, New York, hired Plaintiff, a resident of Sullivan County, New York, as a commercial painter in March 2004, when Plaintiff was 49 years old. Defendant Mohonk's Statement of material facts (Dkt. No. 26-1) ("Mohonk S.M.F.") ¶¶ 1, 8; Plaintiff's Counterstatement of material facts (Dkt. No. 40-4) ("Pl.'s S.M.F.") ¶¶ 1, 8, at 1-2. Her employment was terminated five years later, in June or July 2009. Mohonk S.M.F. ¶ 26; Pl.'s S.M.F. ¶ 26, at 4.

MMH's Properties Department is divided into two separate reporting lines: Maintenance and Projects. Mohonk S.M.F. ¶ 13; Pl.'s S.M.F. ¶ 13, at 2. Painters work on both lines. Plaintiff was hired as a painter on the Projects line, but she would later be transferred to the Maintenance line and then back again to the Projects line. Mohonk S.M.F. ¶ 14; Pl.'s S.M.F. ¶ 14, at 2-3. When Plaintiff was hired in March 2004, MMH employed three other painters in the Properties Department: William Garnsey (age 61); Richard Russo (age 35); and Grady Kane-Horrigan (age 31). Mohonk S.M.F. ¶ 9; Pl.'s S.M.F. ¶ 9, at 9.

While a painter on the Projects line, Plaintiff was supervised by Defendants Anderson and Smiley. Mohonk S.M.F. ¶¶ 5, 14, 26; Pl.'s S.M.F. ¶¶ 5, 14, 26, at 1-2, 4. While a painter on the Maintenance line, she was supervised by Defendant Smiley and Eric Jones, who is not a Defendant in this action. Mohonk S.M.F. ¶¶ 38, 54, 56; Pl.'s S.M.F. ¶¶ 38, 54, 56, at 6, 8. As Director of Properties at MMH, Defendant Dow had no direct supervisory role over Plaintiff or Defendants Anderson and Smiley. See Defendant Dow's Statement of material facts (Dkt. No. 27-6) ("Dow S.M.F.") ¶¶ 1-4 ("At all relevant times, there were at least two levels of managers between Brad Dow and plaintiff."); Pl.'s S.M.F. ¶¶ 1-4, at 15. Defendant Levin was and still is the Director of Human Resources at MMH and the individual to whom Plaintiff allegedly made several reports of discrimination. Mohonk S.M.F. ¶ 3; Pl.'s S.M.F. ¶ 3, at 1.

In her Amended Complaint, Plaintiff claims that MMH—primarily through the actions of individual Defendants Anderson, Smiley, Dow, and Levin—subjected her to gender and age discrimination, retaliated against her for making complaints about that discrimination, created a hostile work environment, and paid her less than a male coworker for equal work. See generally Am. Compl. Although Plaintiff's claims of discrimination and retaliation begin almost from the moment she was hired by MMH, given her concessions in this case and the Court's ultimate decision on the timeliness of her claims, see infra Part IV.A, the Court summarizes the allegations beginning with Plaintiff's transfer from the Maintenance line back to the Projects line in June 2007. For a full statement of the allegations in this case, reference is made to the parties' Statements of material facts and Plaintiff's Memorandum of law. See Mohonk S.M.F.; Pl.'s S.M.F.; Dow S.M.F.; Plaintiff's Memorandum of law in opposition (Dkt. No. 40) ("Pl.'s Opp.").

**A. Plaintiff's Claims Related to Employment**

In June 2007, Plaintiff was transferred back to the Projects line after Rich Russo, a painter with whom she had previously swapped lines, was terminated. Mohonk S.M.F. ¶ 40; Pl.'s S.M.F. ¶ 40, at 6. Plaintiff's pay and hours remained unchanged after the transfer. Mohonk S.M.F. ¶ 27; Pl.'s S.M.F. ¶ 27, at 4. However, the position she had left on the Maintenance line was filled by a man named Tony Gimigliano, who during the four months he held the job was paid $14.00 per hour, one dollar more per hour than Plaintiff had been paid. Mohonk S.M.F. ¶ 89; Pl.'s S.M.F. ¶ 89, at 12; Pl.'s Opp. at 7. Plaintiff discovered the discrepancy after seeing the open position advertised at the higher pay rate. Mohonk S.M.F. ¶ 87; Pl.'s S.M.F. ¶ 87, at 12. After Plaintiff complained to MMH's Human Resources Department, MMH determined that both the advertisement and Gimigliano's pay were the result of a clerical error and corrected the advertisement to reflect the proper $13.00-per-hour rate. Mohonk S.M.F. ¶ 88; Pl.'s S.M.F. ¶ 88, at 12. Plaintiff nonetheless alleges that MMH violated the Equal Pay Act by paying her less than a man for equal work. Am. Compl. ¶¶ 56-58.

During this period of work on the Projects line, Plaintiff was supervised by Defendants Anderson and Smiley,[2] both of whom Plaintiff alleges committed discriminatory acts against her.

---

[2] The Court notes that the parties disagree whether, upon transferring back to the Projects line, Plaintiff at first reported directly to Defendant Smiley and then later to Defendant Anderson, or whether Plaintiff immediately reported to Defendant Anderson. Although Plaintiff agrees with the Mohonk Defendants' assertions in their Statement of material facts that Plaintiff reported to Defendant Anderson immediately upon returning to the Projects line, she claims in her Opposition that Defendant Smiley remained her supervisor until August 2008, when Defendants Smiley and Anderson switched positions and Defendant Anderson once again became her direct supervisor. Compare Mohonk S.M.F. ¶¶ 26, 40, and Pl.'s S.M.F. ¶¶ 26, 40, at 4, 6, with Pl.'s Opp. at 7, 9. Plaintiff's March 2008 review document, however, lists Defendant Anderson as her direct-report supervisor and Defendant Smiley as her reviewing supervisor. Dkt. No. 26-15.

The earliest alleged incident occurred in September 2007, when Plaintiff claims she was assigned by Defendant Smiley to paint a set of fire doors. Pl.'s Opp. at 8. Although she claims that she explained that she would need the doors removed from their hinges to paint them without posing a danger to MMH's guests, Defendant Smiley refused to have them removed until Plaintiff was taken off the job and the job given to a male painter. Id.

A few months later, on January 28, 2008, Plaintiff met with Defendant Levin to discuss her concerns about the allegedly discriminatory conduct of her various supervisors. Mohonk S.M.F. ¶ 83; Pl.'s S.M.F. ¶ 83, at 11. Defendant Levin asked Plaintiff to put her concerns in writing, and on February 4, 2008, Plaintiff provided Defendant Levin with a 22-page written log of complaints, many of which occurred before Plaintiff's transfer back to the Projects line and which had already been discussed with Defendant Levin. Mohonk S.M.F. ¶¶ 84-85; Pl.'s S.M.F. ¶¶ 84-85, at 11. Those that had not been discussed previously with Defendant Levin follow. First, Plaintiff complained that Defendant Anderson had stated over the resort's radio system that he could not reach Plaintiff because she was taking lunch or on an extended break, neither of which Plaintiff claims was true. Pl.'s S.M.F. ¶ 41, at 7; Pl.'s Opp. at 8. Second, Plaintiff complained that she had been forced to work in freezing temperatures without the cold-weather clothing that was given to male coworkers. Pl.'s Opp. at 8; see also Mohonk S.M.F. ¶ 22; Pl.'s S.M.F. ¶ 22, at 3. As to this incident, although she cannot recall whether the female office manager in charge of distributing the uniforms made derogatory remarks to or about her based on her gender or age, Plaintiff insists that the disparity was gender- or age-related. Mohonk S.M.F. ¶¶ 23-24; Pl.'s S.M.F. ¶¶ 23-24, at 3-4. She alleges further that even after making complaints to Defendant Smiley, her supervisor when the uniforms were distributed, she was never given the full complement of cold-weather gear. Pl.'s

S.M.F. ¶ 25, at 4. The Mohonk Defendants maintain, however, that she was given a full complement after making her complaint. Mohonk S.M.F. ¶¶ 21, 25. Third, Plaintiff complained about being required to detail a car, claiming that she was the only member of the Projects line and only painter required to do so. Mohonk S.M.F. ¶ 79; Pl.'s S.M.F. ¶ 79, at 11. She admits, however, that she was joined in detailing the car by a male member of the Properties Department. Mohonk S.M.F. ¶ 80; Pl.'s S.M.F. ¶ 80, at 11.

The Mohonk Defendants insist that Levin investigated Plaintiff's new allegations of discrimination "but concluded that there was simply no evidence [of discrimination]." Mohonk S.M.F. ¶ 86. Plaintiff does not dispute this directly but claims generally that Defendant Levin would disregard complaints that he subjectively determined to be frivolous or with which he did not agree; that he would report employee complaints to superiors only if he deemed them to have validity; and that he would not always "memorialize" his findings about whether there was discrimination. Pl.'s Opp. at 4.

In March 2008, Plaintiff received her 2008 annual review from Defendant Smiley. Mohonk S.M.F. ¶ 63; Pl.'s S.M.F. ¶ 63, at 9. Defendant Smiley scored Plaintiff's performance that year as an overall 3 out of 5, giving her a 3.5% raise. Mohonk S.M.F. ¶ 64; Pl.'s S.M.F. ¶ 64, at 9. The review, however, highlighted Defendant Smiley's "concerns regarding Plaintiff's productivity, industriousness and her tendency to engage in idle conversation with her co-workers."[3] Mohonk S.M.F. ¶ 69; Pl.'s S.M.F. ¶ 69, at 9. Specifically, at one point the review criticized Plaintiff for

---

[3] Similarly, in October 2008, Defendant Smiley issued Plaintiff a written "work appraisal" criticizing her for, *inter alia*, inefficient use of her time on a project. Dkt. No. 26-20.

"gossiping" with her coworkers. Dkt. No. 26-15 at 3.[4] Plaintiff claims that this review was both

discriminatory and retaliatory, as the term "gossiping" was not used in male employees' evaluations.

Mohonk S.M.F. ¶ 65; Pl.'s S.M.F. ¶ 65, at 9; Pl.'s Opp. at 7. Plaintiff further claims to have been

offended by that term's use because her conversations with coworkers were about work and because

she was often not even the person to initiate them. Pl.'s Opp. at 7. She refused to sign the review,

deciding instead to prepare a response and to complain to Defendant Levin about the discrimination

she perceived in the review. Mohonk S.M.F. ¶ 66; Pl.'s S.M.F. ¶ 67, at 9; Pl.'s Opp. at 7. As a

result, her March 2008 review was not finalized until October 2008, and because of this, her raise

did not take effect until then. Mohonk S.M.F. ¶¶ 67-68; Pl.'s S.M.F. ¶¶ 67-68, at 9.[5] At that time,

however, Plaintiff was given $565.76 in retroactive pay to cover the months during which her raise

was ineffective. Mohonk S.M.F. ¶ 68; Pl.'s S.M.F. ¶ 68, at 9.

     Plaintiff also alleges acts of discrimination by Defendant Dow during 2008 and 2009.

Plaintiff claims that in March 2008, while she was removing wallpaper in a room along with her

male coworker Garnsey, Defendant Dow came into the room, straddled her legs while she was

kneeling, pointed his finger at her, and yelled at her for using improper techniques in removing the

wallpaper. Pl.'s S.M.F. ¶¶ 8-9, at 15-16; Pl.'s Opp. at 9. Garnsey was, according to Plaintiff, using

similar techniques but was not reprimanded by Defendant Dow. Pl.'s S.M.F. ¶ 8, at 15. Although

---

[4] In referring to specific pages in the March 2008 review, the Court uses the numbers electronically added to the top of each page by the Clerk of the Court, not the numbers on the bottom of each page.

[5] Plaintiff disputes this point, claiming that she "did not receive her 'March 2008' review until the Summer 2008." Pl.'s S.M.F. ¶ 67, at 9. The Court notes that this assertion is inconsistent with her earlier admission that she received her review in March 2008. See id. ¶ 63. Furthermore, it is inconsistent with the review document itself, which states that it was rendered on March 17, 2008. Dkt. No. 26-15 at 1.

Plaintiff admits that there was nothing explicitly sexual about this encounter with Defendant Dow, she claims that his "posturing made [her] feel uncomfortable and humiliated." Id. ¶ 9, at 16. She claims that she complained to Defendant Levin about Defendant Dow's discriminatory treatment of her during this incident. Pl.'s Opp. at 9.

Similar incidents allegedly occurred in June or July 2008 and March 2009. In June or July 2008, Defendant Dow allegedly yelled at Plaintiff for taking a bathroom break while working on a project. Pl.'s Opp. at 9. That project, according to Plaintiff, required her to work on the resort's roof, which could only be accessed by passing a working rotisserie. Id. Plaintiff claims that she was the only employee assigned to this dangerous task. Id. Later, in March 2009, Defendant Dow allegedly stood over Plaintiff and screamed at her about the way in which she placed caution tape while working on a project involving the resort's central staircase. Id. at 10.

Defendant Anderson, too, allegedly committed discriminatory acts against Plaintiff during 2008 and 2009. In October 2008, Plaintiff claims that Defendant Anderson assigned her to "work on a ladder on a roof that was seven stories high, placed at a severe angle, without guardrails, and on a massive quantity of stones which were strewn about on the roof." Id. at 9. According to Plaintiff, no other painters were asked to work in "this precarious position." Id. She claims to have complained about this issue to Defendants Smiley and Levin. Id. In addition, in January 2009, Plaintiff claims that Defendant Anderson assigned her to work on a single-planked scaffold high above a room, and that he did not assign any of her male coworkers to work on scaffolding that high or that narrow. Id. at 10.

Finally, Plaintiff claims that Defendant Anderson discriminated and retaliated against her by assigning her to paint a room in which there was a potential hazard. On May 27, 2009, Plaintiff was

painting a resort doctor's office at Defendant Anderson's direction when one of the legs of her ladder went through the floor, causing her to fall and be injured. Mohonk S.M.F. ¶ 90-91; Pl.'s S.M.F. ¶ 90-91, at 12. The accident was caused by a hole in the floor that Defendant Anderson had ordered temporarily covered with a piece of linoleum tile. Mohonk S.M.F. ¶ 92. Plaintiff claims that "Anderson decided to not fix the hole, but, rather, to cover it up due to 'time constraint' and after Anderson had determined that [Plaintiff] should work on the project." Pl.'s S.M.F. ¶ 92, at 12-13. Plaintiff complained to Defendant Levin that Defendant Anderson targeted her to work in the room, while knowing there was a potential hazard present there, so that she would be hurt. Pl.'s Opp. at 10.

As a result of her injury from the fall, Plaintiff was placed on workers' compensation leave until June 2009. Mohonk S.M.F. ¶ 93; Pl.'s S.M.F. ¶ 93, at 13.

## B. Plaintiff's Termination

Plaintiff returned to work in June 2009 for only a brief period before her employment with MMH was terminated on June 11. Mohonk S.M.F. ¶ 103; Pl.'s S.M.F. ¶ 103, at 14.

Plaintiff's termination was allegedly conducted in accordance with MMH's plan to reduce costs in response to the economic recession then taking place. Mohonk S.M.F. ¶ 95; Pl.'s S.M.F. ¶ 95, at 13. In early 2009, each MMH Department was advised as to the amount by which its budget had to be reduced. Mohonk S.M.F. ¶ 96; Pl.'s S.M.F. ¶ 96, at 13. Each department director was given discretion to determine how to conduct the reduction, including whether to eliminate jobs and, if so, which jobs to eliminate. Mohonk S.M.F. ¶ 98; Pl.'s ¶¶ 97-98, at 13. The Properties

Department chose to meet its reduction in part by eliminating positions.[6]  Mohonk S.M.F. ¶ 97.

Defendant Dow, then the director of the Properties Department, claims that he reviewed the

positions within the Department to determine which, if eliminated, "would have the least

detrimental effect to the operation" of MMH.  Dow S.M.F. ¶ 20; Dkt. No. 28 ("Dow Affidavit") ¶ 4.

If eliminating the position would "endanger Mohonk and/or prevent Mohonk from continuing to

operate," Defendant Dow would retain it.[7]  Id. ¶ 21.  After reviewing the positions in the Properties

Department based on these criteria, Defendant Dow concluded that two painter positions were

among the positions that could be eliminated.  See Mohonk S.M.F. ¶ 100-01; Pl.'s S.M.F. ¶¶ 100-

01, at 14; Dow S.M.F. ¶ 22.

Defendant Dow next claims that he notified MMH of the positions that could be eliminated

from the Properties Department.  Dow S.M.F. ¶ 23.  According to Defendant Dow, he did not

decide which specific employees would be terminated, nor did he recommend that Plaintiff be

terminated.  Id. ¶¶ 24-25.  Instead, the Mohonk Defendants claim that all employees were

terminated according to seniority.  Mohonk S.M.F. ¶ 99; Dow S.M.F. ¶ 26.  The two painter

positions with the least seniority were held by Plaintiff and David Boss; accordingly, both were

terminated.[8]  Mohonk S.M.F. ¶ 101; Pl.'s S.M.F. ¶ 101, at 14.  The two remaining painters were

---

[6]  Defendant Dow claims that he was *told* (although it is unclear by whom) that he needed to
eliminate positions to reduce expenses.  Dow S.M.F. ¶ 18; Dkt. No. 28 ("Dow Affidavit") ¶ 3.

[7]  In his Affidavit, Defendant Dow also claims that he would retain positions that "were
critical to the continued operation and safety of Mohonk."  Dow Aff. ¶ 4.  Plaintiff attempts to raise
a factual dispute by suggesting that this statement provides a new and somehow different basis for
Defendant Dow's choice of which positions to eliminate.  The Court, however, fails to see any
material difference between Defendant Dow's other stated criteria and this one.

[8]  In addition to Plaintiff and Boss, who was 37-years-old at the time, the following
employees were also terminated on June 11, 2009: (1) Jason Curtis (age 25); (2) Jesse McCarthy

Kane-Horrigan and Garnsey. Mohonk S.M.F. ¶ 102; Pl.'s S.M.F. ¶ 102, at 14. Since Plaintiff's

termination, her position has remained vacant and the Properties Department has continued to

employee only two painters. Mohonk S.M.F. ¶ 104; Pl.'s S.M.F. ¶ 104, at 14. Plaintiff disputes that

she was eliminated according to the neutral criteria of seniority,[9] instead claiming that Dow made

the decision to terminate her specifically, and that the decision was based on gender and age

discrimination and in retaliation for her complaints. Pl.'s S.M.F. ¶ 23-24, at 18; Am. Compl.

On December 3, 2009, Plaintiff filed an administrative complaint with the U.S. Equal

Employment Opportunity Commission ("EEOC") alleging gender and age discrimination and was

issued a "Right to Sue" letter dated September 28, 2010. Mohonk S.M.F. ¶ 106; Pl.'s S.M.F. ¶ 106,

at 14. Plaintiff's Amended Complaint followed on January 18, 2011, and Mohonk's and Dow's

summary judgment Motions on March 29 and 30, 2012. See Dkt.

## III.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c). Although "[f]actual disputes that are irrelevant or

unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d

---

(age 22); (3) Jessica Avampato (age 35); (4) Joette Negron (age 32); (5) Kim Ruger-Noonen (age 23); (6) Elena Lofton (age 28); and (7) Steven Shipe (age 26). Mohonk S.M.F. ¶ 103; Pl.'s S.M.F. ¶ 103.

[9] She does, however, admit that she and Boss were the last two painters hired. Pl.'s S.M.F. ¶ 101, at 14.

Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis

for the motion and of identifying those portions of the record that the moving party claims will

demonstrate the absence of a genuine issue of a material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986).  However, if the moving party has shown that there is no genuine dispute as to any

material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."  Id.  This

requires the nonmoving party to do "more than simply show that there is some metaphysical doubt

as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in

favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150

(2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).  A

court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine

disputes of fact, "not to deciding them."  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224

(2d Cir. 1994).

## IV.    DISCUSSION

In her Opposition, Plaintiff expressly abandons her claims for hostile work environment

under Title VII, the ADEA, and the NYSHRL and for retaliation under the NYSLL.  Pl.'s Opp. at 1.

The Court does not, therefore, consider these claims further.[10]

---

[10]  The Defendants argue that Plaintiff's mere raising of claims under the NYSLL acts as a
waiver of her claims under the NYSHRL.  Mohonk Mem. at 23 n.39; Defendant Dow's
Memorandum of law (Dkt. No. 27-7) ("Dow Mem.") at 19-20.  While admitting that NYSLL claims
can effect the waiver of some other claims, Plaintiff counters that her NYSHRL claims do not fall
within the scope of that waiver.  Pl.'s Opp. at 31-32.  The Court need not resolve this particular

The Court first determines whether Plaintiff's remaining claims are timely under the applicable statutes of limitation. After concluding that many of Plaintiff's claims are time-barred, the Court next considers whether the timely claims can survive the Defendants' Motions for summary judgment. The Court ultimately holds that they cannot and grants both Motions.

**A. Timeliness of Plaintiff's Claims**

*1. Plaintiff's Claims Under Title VII, the ADEA, and the NYSHRL*

The Mohonk Defendants first contend that the applicable statutes of limitation render many of Plaintiff's remaining claims under Title VII, the ADEA, and the NYSHRL untimely. Defendant Mohonk's Memorandum of law (Dkt. No. 26-2) ("Mohonk Mem.") at 10-11. Plaintiff in turn concedes that some of her claims are untimely but disputes the Mohonk Defendants' calculation of the exact date after which these claims became time-barred. Pl.'s Opp. at 14.

Under Title VII, "a New York plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act." Morales v. City of N.Y. Dep't of Juvenile Justice, No. 10 Civ. 829, 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012) (citing Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999)); see also 42 U.S.C. § 2000e-5(3). "This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred by the failure to file a timely charge." Id. (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)). The same statue of limitations applies to claims under the ADEA. Hodge v. N.Y. College of Podiatric Med., 157 F.3d 164, 166 (2d Cir. 1998). Claims brought under NYSHRL are subject to a three-year statute of limitations that begins to run at the time of the alleged discriminatory act. Lightfoot v. Union

---

dispute, however, because it concludes that the Mohonk Defendants and Defendant Dow are entitled to summary judgment dismissing Plaintiff's NYSHRL claims.

Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997).

Here, Plaintiff filed her claim with the EEOC on December 3, 2009. See Dkt. No. 26-24.

Under the Mohonk Defendants' calculations, Plaintiff's Title VII and ADEA claims and her

NYSHRL claims arising from discrete acts of discrimination are untimely if those acts occurred

before February 9, 2009, and March 5, 2007, respectively.[11]  Mohonk Mem. at 11.  Plaintiff,

however, advances February 6, 2009, and December 3, 2006, as the dates after which those claims

became time-barred.  Pl.'s Opp. at 14.

Although the Court notes that Plaintiff's calculation of the NYSHRL limitations period

appears to be based erroneously on the filing date of her EEOC complaint and not the filing date of

her Complaint, see Lightfoot, 110 F.3d at 907, the Court finds it unnecessary to resolve this

particular dispute because Plaintiff has confined her arguments to acts occurring after 2008.  See

Pl.'s Opp. at 16, 26-28.  Claims arising from these acts are timely under the limitations periods

advanced by all parties.  The Court holds that all acts alleged to have occurred prior to the specific

acts relied on by Plaintiff in her Opposition, however, are incapable of supporting timely claims

under Title VII, the ADEA, or the NYSHRL.[12]

_____

[11]  Where a plaintiff alleges "discrete" acts of unlawful discrimination or retaliation, the
statute of limitations begins to run when each discrete discriminatory act occurs.  See Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002); Coffey v. Cushman & Wakefield, Inc.,
No. 01 Civ. 9447, 2002 WL 1610913, at *2 (S.D.N.Y. July 22, 2002) (noting that discrete acts
falling outside of the statutory period cannot form a basis for relief even if they are related to other
actionable conduct that is otherwise not time barred).

[12]  Plaintiff makes no argument that the "continuing violation doctrine" applies in this case to
delay the running of the limitations period to the date of her termination.  See Miller v. Int'l Tel. &
Tel. Corp., 755 F.2d 20, 25 (2d Cir. 1985).  Instead, she concedes that her claims arising from acts
occurring before a certain date are time-barred and confines her arguments in her Opposition
accordingly.

*2. Plaintiff's Claims Under the Equal Pay Act*

The Mohonk Defendants next contend that Plaintiff's Equal Pay Act claim is also untimely under the applicable statute of limitations. Mohonk Mem. at 23-24. That claim is based on Gimigliano's being paid at a rate of $14.00 per hour from August to October 2007 while Plaintiff was payed a dollar less per hour for performing the same work. Am. Compl. ¶¶ 25, 56-58.

A claim brought under the Equal Pay Act "must be commenced within two years of its accrual, or three years if the violation is willful." Pollis v. New Sch. for Soc. Research, 132 F.3d 115, (2d Cir. 1997) (citing 29 U.S.C. § 255(a)). Plaintiff does not argue that Mohonk Defendants' alleged violation was willful. See generally Am. Compl.; Pl.'s Opp. Moreover, the Court finds that the facts alleged by Plaintiff do not support a finding of willfulness. Indeed, Plaintiff concedes that when she brought the pay discrepancy to MMH's attention, it was acknowledged as a clerical error, and the November 2007 advertisement listing the newly open painter position at the higher rate was promptly corrected. Mohonk S.M.F. ¶ 88; Pl.'s S.M.F. ¶ 88, at 12. Accordingly, the applicable limitations period is two years.

Under the two-year limitations period, Plaintiff's claim must have arisen after December 2008 to be timely. Because Gimigliano was last paid the higher rate in October 2007, Plaintiff's claim arose at that time and was therefore untimely when brought more than three years later on December 23, 2010.

Plaintiff nonetheless attempts to circumvent the limitations bar to her Equal Pay Act claim by arguing for the first time in her Opposition that she was paid less than male painters throughout her employment at MMH. Pl.'s Opp. at 30. This plainly constitutes an attempt by Plaintiff to further amend her Amended Complaint to add a new theory of recovery at this late stage of

15

litigation, which she is not permitted to do. See McChesney v. Bastien, No. 9:10-CV-1409, 2012 WL 4338707, at *5 n.14 (N.D.N.Y. Sept. 20, 2012) (collecting cases). The Court therefore disregards this new argument and holds that Plaintiff's Equal Pay Act claim is time-barred.

### B. Plaintiff's Remaining Claims for Discrimination and Retaliation Against MMH

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), the Supreme Court articulated the "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. Under McDonnell Douglas, (1) a plaintiff must first establish a *prima facie* case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. Id. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). Claims under the ADEA and the NYSHRL are also analyzed under the McDonnell Douglas burden-shifting formula. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (ADEA); Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 n.1 (2d Cir. 2008) (NYSHRL).

### 1. *Prima Facie* Case

The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal," Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of

16

production, not persuasion, and involves no credibility assessments. Reeves, 530 U.S. at 143.

To establish a *prima facie* case of discrimination or retaliation under Title VII, the ADEA, or

the NYSHRL, a plaintiff must demonstrate, *inter alia*, that she suffered an adverse employment

action.[13] To be considered "adverse" in the context of a discrimination claim, an employment action

must represent a "materially adverse change in the terms and conditions of employment" and be

"more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v.

N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). Acts of

an employer that are deemed "sufficiently disadvantageous to constitute an adverse employment

action include a termination of employment, a demotion evidenced by a decrease in wage or salary,

a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular situation." Beyer v. Cnty. of Nassau, 524

F.3d 160, 163 (2d Cir. 2008) (quoting Williams v. R.H. Donnelley, 368 F.3d 123, 128 (2d Cir.

2004)).

In the context of a retaliation claim, a plaintiff must demonstrate that a "reasonable

employee would have found the challenged action materially adverse." Burlington N. & Santa Fe

Ry. v. White, 548 U.S. 53, 68 (2006). In other words, the action must be one that "might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." Id.

Nevertheless, engaging in protected activity "cannot immunize [an] employee from those petty

---

[13] E.g. Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012) (ADEA retaliation claims); Gorzynski, 596 F.3d at 107 (ADEA discrimination claims); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (Title VII discrimination claims); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (NYSHRL discrimination claims); Moncriffe v. Classique Interiors & Design Inc., No. CV 09-0986, 2011 WL 2224880, at *5 (E.D.N.Y. June 2, 2011) (NYSHRL retaliation claims).

slights or minor annoyances that often take place at work and that all employees experience,"
including "antipathy" and "snubbing." Id. ("[I]t is important to separate significant from trivial
harms.").

Whether examined under the rubric of discrimination or retaliation, a plaintiff must set forth
objective proof that the alleged action was materially adverse. See id. at 68-69; Kaytor v. Elec. Boat
Corp., 609 F.3d 537, 555 (2d Cir. 2010) (retaliation); Beyer, 524 F.3d at 164 (discrimination)
("[W]e require a plaintiff to proffer objective indicia of material disadvantage; subjective personal
disappointment is not enough." (internal quotation marks and citations omitted)).

In this case, Plaintiff first contends that her termination qualifies as an adverse employment
action. Pl.'s Opp. at 15. The Mohonk Defendants in turn concede this point. Mohonk Mem. at 12;
Defendant Mohonk's Reply memorandum of law (Dkt. No. 44) ("Mohonk Reply") at 2-4. Plaintiff
next contends that several post-2007 task assignments also qualify as adverse employment actions:
(1) her being required to work on the roof in July 2008 and October 2008; (2) her being required to
work in freezing temperatures without adequate clothing in February 2008; (3) her being required to
work on a single-planked scaffold in January 2009; and (4) her being required to work in the
doctor's office where the hole in the floor was covered only by linoleum tile in May 2009. Pl.'s
Opp. at 16, 26-28. While the Mohonk Defendants do not dispute that any but the second task
assignment actually occurred as alleged, they dispute whether any is an adverse employment action.
See Mohonk S.M.F. ¶ 21; Mohonk Reply at 2-4.

Plaintiff argues that these tasks constitute adverse employment actions because they are
more dangerous than the tasks assigned to her male coworkers. Pl.'s Opp. at 16. She cites
Gutierrez v. City of New York, No. 08 Civ. 6537, 2011 WL 7832709, at *3 (S.D.N.Y. Sept. 26,

2011), in support of this argument.  Id.  In Gutierrez, Hispanic police detectives brought forth objective evidence showing that they were routinely denied investigative overtime in favor of white police detectives, forcing the Hispanic detectives to perform "the more difficult and dangerous arrest overtime."  Id. at *3.  This routine denial of the less dangerous overtime work was found by the court to constitute a materially adverse change in the terms and conditions of the Hispanic detectives' employment—in other words, adverse employment action.  Id.

Plaintiff's allegations and the record before the Court in this case do not support a similar finding.  The tasks that Plaintiff claims are materially adverse represent only a handful of allegedly dangerous assignments scattered over a period of nearly one-and-a-half years.  Unlike in Gutierrez, the record here is devoid of any objective evidence that Plaintiff was routinely assigned the more dangerous work.  Furthermore, the record contains only Plaintiff's assertion, with no objective evidentiary support, that her male coworkers did not perform similarly dangerous tasks.  See Beyer, 524 F.3d at 164; see also Little v. New York, No. 96 CV 5132, 1998 WL 306545, at *5 (E.D.N.Y. June 8, 1998) ("[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn."), aff'd, 1999 WL 220147 (2d Cir. April 14, 1999).  Resolving all ambiguities and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to raise a genuine issue of material fact that each of these tasks were adverse employment actions under either the discrimination or retaliation rubrics.[14]

---

[14]  Assuming *arguendo* that Plaintiff has raised a genuine issue of material fact concerning her allegedly being required to work in freezing temperatures without cold-weather gear, she nonetheless fails to offer objective evidence that would allow a reasonable jury to draw an inference of discrimination, the final element of a *prima facie* case of discrimination.  Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).  Nor does she offer any objective evidence that would allow a

Plaintiff argues, however, that even if these tasks are not individually adverse employment actions under the retaliation rubric, taken together and along with other incidents they create an "atmosphere" of material adversity. Pl.'s Opp. at 26-28. In addition to the assigned tasks, Plaintiff points to the following incidents as contributing to this "atmosphere": (1) her being criticized by Defendant Dow for using improper techniques in removing wallpaper in March 2008; (2) her being criticized by Defendant Dow for taking a bathroom break in June or July 2008; (3) her delayed raise in October 2008; (4) her being yelled at by Defendant Dow while working on the staircase in March 2009; and (5) her being forced to work beyond her light-duty limitations upon her return to work after her accident in June 2009. Id. at 27-28.

Plaintiff is correct that acts of retaliation are "considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross to be actionable." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010). It remains true, however, that "the test for adverse employment action [in the retaliation context] is whether a reasonable employee would have been deterred from engaging in protected activities." Jantz v. Emblem Health, No. 10 Civ. 6076, 2012 WL 370297, at *15 (S.D.N.Y. Feb. 6, 2012) (citing Kessler v. Westchester Cnty. Dep't of Soc.

---

reasonable jury to infer a retaliatory motive, the final element of a *prima facie* case of retaliation. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff does not to offer a single act, statement, or admission by MMH or its employees to support her allegation that she was treated more harshly on this occasion because of her gender or age. In fact, she admits that she cannot recall whether the MMH employee in charge of distributing uniforms ever made any comment to her about her gender or age or whether any other MMH employee ever made such a comment to her. See, e.g., Mohonk S.M.F. ¶¶ 23-24; Pl.'s S.M.F. ¶¶ 8, 10, 23-24, at 3-4, 15-16; Dow S.M.F. ¶¶ 8, 10. In addition, nothing in the record suggests that she ever complained to her supervisors about discrimination or that Defendant Levin ever informed her supervisors about her complaints to him. All that exists is Plaintiff's conclusory allegation that this incident was the result of gender and age discrimination or retaliation. But "a Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." Little, 998 WL 306545, at *5.

Servs., 461 F.3d 199, 205–07 (2d Cir. 2006)). "The Second Circuit has instructed that while the test is an objective [one], it remains relevant whether the plaintiff himself was deterred from complaining." Id. (citing Tepperwien v. Entergy Nuclear Ops., Inc., 663 F.3d 556, 572 (2d Cir. 2011). Here, the record shows that Plaintiff complained at least three times during the relevant period in response to alleged discrimination: (1) in January 2008, when she submitted a 22-page list of complaints to Defendant Levin that included a complaint about working outside without cold-weather gear; (2) in March 2008, when she complained to Defendant Levin about the allegedly discriminatory contents of her yearly review (which her refusal to sign was admittedly the direct cause of the delay in her raise that year); and (3) in May or June 2009, when she complained to Defendant Levin about Defendant Anderson after being injured while working in the doctor's office. Nowhere in her initial Complaint, her Opposition, or her Counterstatement of material facts does Plaintiff contend that she was ever dissuaded from complaining about discriminatory conduct. Accepting the facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to raise a genuine issue of material fact that the alleged retaliatory acts by the Mohonk Defendants, when viewed in the aggregate, amounted to adverse employment action.

Accordingly, Plaintiff has failed to satisfy her burden of establishing a *prima facie* case of discrimination or retaliation in regard to the tasks just discussed.

### 2. Reason for Termination

Plaintiff has established a *prima facie* case of discrimination and retaliation in regard to her termination. The burden therefore shifts to the Mohonk Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. McDonnell Douglas, 411 U.S. at 802. To meet its burden, the Mohonk Defendants assert that Plaintiff was terminated as part of a plan to cut

costs instituted in response to the global financial crisis that began in 2008. Mohonk S.M.F. ¶ 95; Mohonk Mem. at 8. Under that plan, "[e]ach division director was afforded the discretion to determine which positions in his/her division would be eliminated," and "[o]nce the positions were chosen, employee terminations were conducted solely by seniority." Mohonk S.M.F. ¶¶ 98-99; Mohonk Mem. at 9. According to all Defendants, Defendant Dow concluded that two painters could be eliminated without endangering MMH's operation. Mohonk S.M.F. ¶ ; Dow S.M.F. ¶¶ 21-22. Defendant Dow then informed MMH of his decision, and the last two painters hired, Plaintiff and David Boss, were terminated. Mohonk S.M.F. ¶ 101; Dow ¶¶ 23. The Court finds that this explanation satisfies the Mohonk Defendants' burden at step two of the <u>McDonnell Douglas</u> framework.

Because the Mohonk Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that the proffered reason is pretextual. <u>McDonnell Douglas</u>, 411 U.S. at 804. To meet her burden on her discrimination claim, Plaintiff must present "admissible evidence [of] circumstances that would be sufficient to permit a rational finder of fact to infer that [the Mohonk Defendants'] employment decision was more likely than not based in whole or in part on discrimination." <u>Feingold</u>, 363 F.3d at 152. This burden is higher than that required to establish a *prima facie* case of discrimination. Plaintiff must show "*both* that [the Mohonk Defendants'] reason was false, *and* that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) (emphasis in original); <u>see also</u> <u>Roncallo v. Sikorsky Aircraft</u>, 447 F. App'x 243, 245 (2d Cir. 2011). "[E]ven in the discrimination context, [Plaintiff] must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997); <u>Meiri v.</u>

Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

To meet her burden on her retaliation claim, Plaintiff must provide admissible evidence that her termination was related to protected activity and not the Mohonk Defendants' proffered reason. See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 783 F. Supp. 2d 381, 413 (W.D.N.Y. 2010), aff'd, 660 F.3d 98 (2d Cir. 2011) (granting summary judgment to employer where even assuming employer's reason for termination was false, the plaintiff failed to come forward with evidence that termination was causally linked to protected activity).

Plaintiff has not satisfied either burden. In regard to her discrimination claim, she has failed to offer admissible evidence that would permit a reasonable jury to find that the Mohonk Defendants' reason for terminating her was mere pretext for discrimination based on gender or age. Plaintiff contends that she was not actually terminated according to the neutral criteria of seniority but rather was chosen for termination by Defendant Dow specifically and for discriminatory reasons.[15] Pl.'s Opp. at 20. She fails, however, to point to any objective evidence to support her contention. Nowhere in the record is there any indication that she has personal knowledge that Defendant Dow chose her for termination specifically rather than—as Defendants assert—choosing to eliminate two painter positions generally. "Plaintiff's beliefs cannot replace the admissible evidence required to permit an inference of discrimination and survive summary judgment." Waters

---

[15] Plaintiff points to Defendant Levin's deposition testimony in which he states that Defendant Dow made the decision to terminate employees *in his division*. Pl.'s Opp. at 20. The Court finds that this testimony neither supports Plaintiff's assertion that Defendant Dow chose *specific employees* for termination nor contradicts the Mohonk Defendants' assertion that he did not. Therefore, it does not raise a genuine issue of material fact.

23

v. Gen. Bd. of Global Ministries, 769 F. Supp. 2d 545, 555 (S.D.N.Y. 2011).

Plaintiff next contends that the Mohonk Defendants' proffered reason for her termination is false because other departments chose to meet their cost-cutting obligations in ways other than terminating employees and because terminating employees covered only a small percentage of the overall budget shortfall. Id. at 19, 22-23 (pointing to the fact that the "elimination of all employees across the divisions only resulted in a savings of $308,134, even though $2 million was to be saved over two year [sic]"). However, the mere assertion that Mohonk could have chosen other, better methods of cutting costs does not satisfy Plaintiff's burden on step three of the McDonnell Douglas framework because "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." Dister v. Continental Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a court] conclude that a reasonable trier of fact could find that it is pretextual." Fleming v. MaxMara USA, Inc., 371 F. App'x 115, 118 (2d Cir. 2010) (citing Dister, 859 F.2d at 1116)). Despite Plaintiff's arguments, the Court finds the Mohonk Defendants' proffered reason for terminating Plaintiff to be plausible.

Plaintiff also contends that the Mohonk Defendants' reason for terminating her is pretextual because she "had a skill set in both commercial decorative painting and as an artist" that she "consistently used . . . during the course of her employment." Pl.'s Opp. at 20. However, Plaintiff fails to point to any objective evidence in the record supporting her claim to unique skill,[16] let alone

---

[16] See Walters v. Columbia Presbyterian Hosp., No. 89 Civ. 1326, 1990 WL 43932, at *5 (S.D.N.Y. Apr. 9, 1990) ("In discrimination cases, 'with respect to proof of the claimant's qualifications either to fill the position sought, to continue in his present position, or to assume another position at the time of a reduction-in-force, the testimony of the employee himself carries little weight.'" (quoting EEOC v. Trans World Airlines, Inc., 544 F. Supp. 1187, 1219 (S.D.N.Y.

that her skill was "'so superior to [that] of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen [Plaintiff for termination].'" Meyers v. Medco Health Solutions, Inc., No. 09 Civ. 09216, 2012 WL 4747173, at *13 (S.D.N.Y. Oct. 4, 2012) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 103 (2d Cir. 2001)).

In regard to her retaliation claim, even assuming *arguendo* that Plaintiff engaged in protected activity, Plaintiff has failed to offer admissible evidence that would permit a reasonable jury to find that her termination was related to that activity.[17] Plaintiff contends that Dow made the decision to terminate her specifically and in retaliation for her complaints about discrimination. Pl.'s Opp. at 20. But she has not identified any objective evidence to support her contention. In addition to providing no objective evidence of Defendant Dow singling her out for termination, Plaintiff admits that: (1) she never complained to Defendant Dow about discrimination or retaliation; (2) she never told Defendant Dow that she made such complaints; (3) Defendant Dow never spoke with Defendant Levin about her complaints to him; and (4) Defendant Dow did not know she had made those complaints. Pl.'s S.M.F. ¶¶ 14-17, at 16-17. Furthermore, there is no dispute that since June 2010, Plaintiff's position has remained unfilled. Mohonk S.M.F. ¶ 104; Pl.'s S.M.F. ¶ 104. Nor is there a dispute that: (1) Boss, the other painter terminated at the same time as Plaintiff, was both male and younger than she; or (2) that both males and employees younger than her were terminated from other departments on the same day. See Mohonk S.M.F. ¶¶ 101, 103;

---

1982)))

[17] Even if acts falling outside the limitations periods are considered by the Court "as background evidence in support of [Plaintiff's] timely claim" for retaliation, see Pl.'s Opp. at 14 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)), the Court's analysis and ultimate decision are unaltered because Plaintiff still has failed to demonstrate that her termination was connected to her complaints about discrimination.

Pl.'s S.M.F. ¶¶ 101, 103.

Viewing the record as a whole and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that no reasonable jury could find that the legitimate reason offered by the Mohonk Defendants for terminating Plaintiff was a pretext for discrimination based on gender or age or that Plaintiff's termination was related to her complaints about discrimination.

### C. Plaintiff's Claims For Aiding and Abetting Against the Individual Defendants

While Title VII and the ADEA do not provide for individual liability, Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010), an individual may be held liable under the NYSHRL for "aiding and abetting" the discriminatory or retaliatory actions of her employer. Feingold, 366 F.3d at 161 n.19 (recognizing disagreement in state courts but noting that the "majority of courts that have considered the issue have affirmed the existence of a cause of action against individual defendants under the aid-or-abet provision of the NYSHRL" and citing cases); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) ("[A] defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable."); see also N.Y. EXEC. LAW § 296(6). Indeed, some district courts in this Circuit have held that an individual can be held liable as an aider and abettor even though it was primarily her actions that make the employer liable—in effect, that she can aid and abet her own actions. See, e.g., Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2009); Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2009). But see Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 115 (E.D.N.Y. 2011) (recognizing a disagreement between district courts and citing cases). However, "'since it is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting, a plaintiff

cannot prevail against an individual on her [NYSHRL] claims unless she can first establish the liability of her employer.'" <u>Alexander</u>, 829 F. Supp. 2d at 115 (quoting <u>Pellegrini v. Sovereign Hotels, Inc.</u>, 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010)).

Plaintiff claims that individual Defendants Anderson, Smiley, Levin, and Dow are each liable under the NYSHRL's aidding-and-abetting provision. Am. Compl. ¶ 62. But the Court has already determined *supra* that MMH is not liable to Plaintiff. Therefore, the individual Defendants cannot be held individually liable for actions that the Court has already determined do not make their employer, MMH, liable to Plaintiff. <u>Id.</u> at 115.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Mohonk Defendants' Motion (Dkt. No. 26) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Defendant Dow's Motion (Dkt. No. 27) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 4) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:      February 19, 2013
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

27